UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | |
|---|---|
| QURIO HOLDINGS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DISH NETWORK CORPORATION, and DISH NETWORK, LLC, <br><br> Defendants. | Civil Action No. <br><br><br> **JURY TRIAL DEMANDED** |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Qurio Holdings, Inc. ("Qurio"), alleges the following for its complaint of patent infringement against Dish Network Corporation and Dish Network, LLC (hereinafter Dish or "Defendants").

### NATURE OF THE ACTION

This is an action for patent infringement of (1) United States Patent No. 8,102,863 entitled "Highspeed WAN To Wireless LAN Gateway" ("the 863 Patent") and (2) United States Patent No. 7,787,904 entitled "Personal Area Network Having Media Player And Mobile Device Controlling The Same" ("the 904 Patent"), under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*, and seeking damages and injunctive and other relief under 35 U.S.C. § 281, *et seq.*

## THE PARTIES

1. Plaintiff Qurio is a Delaware corporation with a principal place of business at 20 Depot Street, Suite 2A, Peterborough, New Hampshire 03458-1453. Qurio is a technology company that develops technological solutions for network communications, telephony, and media delivery and distribution, including images, video and music.

2. On information and belief, Defendant Dish Network Corporation is a Colorado-based corporation organized and existing under the laws of the State of Nevada, with its principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112.

3. On information and belief, Defendant Dish Network LLC is a Colorado-based corporation, with its principal place of business at 9601 S. Meridian Blvd., Englewood, CO 80112, and is a wholly-owned subsidiary of Defendant Dish Network Corporation.

## JURISDICTION AND VENUE

4. This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action concerns the infringement of United States patents.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, among other reasons, Defendants have transacted business in the State of Illinois and Defendants have committed and continue to commit acts of patent infringement in Illinois, and Defendants have regular and established places of business in this Judicial District.

7. Upon information and belief, this Court has personal jurisdiction over each Defendant at least because each transacts substantial business in the State of Illinois, directly or

through intermediaries, including: (i) at least a portion of the infringements alleged herein, and (ii) regularly doing or soliciting business in Illinois, engaging in other persistent courses of conduct, maintaining continuous and systematic contacts in Illinois, purposefully availing itself of the privileges of doing business in Illinois, and/or deriving substantial revenue from goods and services provided to individuals in Illinois.

## THE PATENTS-IN-SUIT

8.      Plaintiff Qurio is and has been at all relevant times the owner by assignment of the 863 Patent, entitled "High-Speed WAN To Wireless WLAN Gateway," which the United States Patent and Trademark Office duly issued on January 24, 2012.  A true and correct copy of the 863 Patent is attached hereto as Exhibit A.

9.      The inventions of the 863 Patent are applicable to, among other things, providing communication between a high-speed wide-area network ("WAN") network and a lower speed Wireless Local Area Network ("WLAN").

10.     Plaintiff Qurio is and has been at all relevant times the owner by assignment of the 904 Patent, entitled "Personal Area Network Having Media Player And Mobile Device Controlling The Same," which the United States Patent and Trademark Office duly issued on August 31, 2010.  A true and correct copy of the 904 Patent is attached hereto as Exhibit B.

11.     The inventions of the 904 Patent are applicable to, among other things, utilization of mobile devices to control content played by a plurality of media devices.

## DEFENDANTS' INFRINGING ACTIVITIES

12.     Defendants distribute media content and provide video-on-demand and related services to their customers across the United States, by, among other things, transmitting content to their customers' televisions, digital video recorders ("DVRs"), set-top boxes ("STBs"), and

3

wireless and other devices.  Defendants purport to be the third largest provider of pay-TV television services in the United States.  *See* Exhibit C (select portion of Dish Form 10-K/A (2013 Amended Annual Report), at p. 1.  Defendants purport to have over 14 million subscribers for their services in the United States. *See* Exhibit C (select portion of Dish Form 10-K (2013 Amended Annual Report), at p. 1.

13. In filings with the United States Securities and Exchange Commission, Defendants describe their business activities as follows:

> **OVERVIEW**
>
> DISH Network Corporation was organized in 1995 as a corporation under the laws of the State of Nevada. We started offering the DISH branded pay-TV service in March 1996 and are the nation's third largest pay-TV provider. . . .
>
> - ***DISH.*** The DISH branded pay-TV service ("DISH") had 14.057 million subscribers in the United States as of December 31, 2013.  The DISH branded pay-TV service consists of Federal Communications Commission ("FCC") licenses authorizing us to use direct broadcast satellite ("DBS") and Fixed Satellite Service ("FSS") spectrum, our satellites, receiver systems, third-party broadcast operations, customer service facilities, a leased fiber network, in-home service and call center operations, and certain other assets utilized in our operations. In addition, we market broadband services under the dishNET™ brand.
>
> \* \* \*
>
> - *High-Quality Products.* We offer a wide selection of local and national programming, featuring more national and local high definition ("HD") channels than most pay-TV providers. We have been a technology leader in our industry, introducing award-winning DVRs, dual tuner receivers, 1080p video on demand, and external hard drives. To maintain and enhance our competitiveness over the long term, we introduced the Hopper® set-top box during the first quarter 2012, which a consumer can use, at his or her option, to view recorded programming in HD in multiple rooms. During the first quarter 2013, we introduced the Hopper set-top box with Sling, which promotes a suite of integrated features and functionality designed to maximize the convenience and ease of watching TV anytime and anywhere, which we refer to as DISH Anywhere,™ that includes, among other things, online access and Slingbox "placeshifting" technology. In addition, the Hopper with Sling has several innovative

features that a consumer can use, at his or her option, to watch and record television programming through certain tablet computers and combines program-discovery tools, social media engagement and remote-control capabilities through the use of certain tablet computers and smart phones. We recently introduced the Super Joey receiver. A consumer can use, at his or her option, the Super Joey combined with the Hopper to record up to eight shows at the same time.

* * *

*Programming.* We provide programming that includes more than: (i) 280 basic video channels, including, but not limited to, 25 regional sports channels and 70 channels of pay-per-view content, (ii) 70 Sirius Satellite Radio music channels, (iii) 30 premium movie channels, (iv) 10 specialty sports channels, (v) 3,100 standard definition and HD local channels, and (vi) 300 Latino and international channels. . . . As of December 31, 2013, we provided local channels in standard definition in all 210 TV markets in the U.S. and local channels in HD in more than 190 markets in the U.S.

* * *

*DISH Anywhere.* A consumer can use DISH Anywhere, at his or her option, to remotely control certain features of their DVRs as well as view live TV and DVR recordings (with required compatible hardware) using the DISH Anywhere application on compatible devices such as smartphones and tablets, or on laptops and home computers by accessing dishanywhere.com. Dishanywhere.com offers more than 85,000 movies, television shows, clips and trailers.

**Content Delivery**

*Satellites.* Our DISH branded programming is primarily delivered to customers using satellites that operate in the "Ku" band portion of the microwave radio spectrum. The Ku-band is divided into two spectrum segments. The portion of the Ku-band that allows the use of higher power satellites – 12.2 to 12.7 GHz over the United States – is known as the Broadcast Satellite Service band, which is also referred to as the DBS band. The portion of the Ku-band that utilizes lower power satellites – 11.7 to 12.2 GHz over the United States – is known as the FSS band. . . .  We own or lease capacity on 14 DBS satellites in geostationary orbit approximately 22,300 miles above the equator.

*Conditional Access System.* Our conditional access system secures our programming content using encryption so that only authorized customers can access our programming. We use microchips embedded in credit card-sized access cards, called "smart cards," or security chips in our receiver systems to control access to authorized programming content ("Security Access Devices").

*See* Exhibit C (select portion of Dish Form 10-K (2013 Amended Annual Report)), at pp. 1-3.

14.     Upon information and belief, Defendants make, use, sell, lease, import and offer for sale in the United States products and services that allow users to transfer and display video and other content from Defendants' wide area network, including but not limited to Defendants' television broadcasting services and DVR, Hopper and Sling products and services, and Defendants advertise, for example, the following features of their media content delivery products and services:

> The Hopper® is a whole-home HD DVR that gives you the power to pause, rewind and record live TV in any room. Plus, you can access your DVR on all TVs so you can record a movie in the living room, start watching it in the bedroom and then finish in the kitchen.
> \* \* \*
> Only the Hopper DVR gives you the power to transform your computer, smartphone or tablet into your TV and enjoy your same TV from home–anywhere! All of your live channels, everything on your DVR, and thousands of On Demand titles will keep you and your family entertained anywhere.

*See* Exhibit D (copy of  http://www.dish.com/technology/hopper/  (accessed July 28, 2014)).

15.     Defendants also offer products and services that they refer to as Hopper, and Hopper with Sling. Defendants describe this product and corresponding services as follows

> Connect your Hopper with Sling® to High-Speed Internet or simply connect your Hopper, ViP® 722 or 722k HD DuoDVR® to a Sling® adapter with a single USB cable and high-speed Internet service. Download our FREE DISH Anywhere™ Mobile App to your mobile device or go to dishanywhere.com from your computer. Watch TV anywhere over an Internet connection at your convenience.
>
> With our free DISH Anywhere Mobile App, you can manage your DVR and even view live TV and DVR content using our Sling technology anywhere you have Wi-Fi or 3G/4G connection! DISH is the only provider that lets you watch TV everywhere both in-home and on-the-go!
> \* \* \*
> Connect your Hopper® with Sling®, Hopper, ViP 722 or 722k HD DuoDVR® to High-Speed Internet service.
>
> For Hopper®, ViP722 and 722K receivers, attach your Sling® Adapter to your DVR using the USB port.

6

*See* Exhibit E (copy of http://www.dish.com/technology/dish-anywhere/?WT.svl=technology-subnav (accessed July 31, 2014)).

16. Defendants also make and provide to their customers' software that customers' download and is executed on customers' mobile electronic devices, including but not limited to products and services Defendants refer to, for example, as the DISH Anywhere Apps. Defendants describe some of these services as follows:

> With our free DISH Anywhere Mobile App, you can manage your DVR and even view live TV and DVR content using our Sling technology anywhere you have Wi-Fi or 3G/4G connection! DISH is the only provider that lets you watch TV everywhere both in-home and on-the-go! With a wireless connection, our app lets you:
> - Watch all your live TV channels
> - Watch On Demand content
> - Watch all your DVR recordings
> - Schedule and manage your DVR recordings
> - Search the program guide
> - Control your receiver
> - Transfer your recordings to watch offline
>
> \* \* \*
>
> **Description**
> Take your TV with you. With the DISH Anywhere app, you can watch the same TV you get at home on your iPhone or iPod touch. Enjoy your favorite live or recorded programs anytime, anywhere. Also, manage your home television with a full-featured DVR manager and a searchable program guide.

Exhibit F (copy of http://www.dish.com/technology/dish-anywhere/ (accessed July 28, 2014)); and

Exhibit G (copy of https://itunes.apple.com/us/app/dish-anywhere/id327125649?mt=8 (accessed July 28, 2014)).

## COUNT I:
## INFRINGEMENT OF THE 863 PATENT

17. Plaintiff incorporates paragraphs 1-16 herein by reference as if set forth here in full.

18. Defendants have been and are currently directly infringing, literally or under the doctrine of equivalents, one or more claims of the 863 Patent by making, using, offering to sell, and/or selling within the United States, and/or importing into the United States, without authority, products and services that distribute and display video content from their network on subscribers' devices. Without limitation, and by example only, Defendants directly infringe and continue to directly infringe one or more claims of the 863 Patent by making, selling, using and offering for sale at least their ViP DVRs and Hopper DVRs with Sling, and other products and services, and by providing and operating the Sling technology on their media distribution WAN, and transmitting to customers' devices over a WLAN.

19. By practicing the methods claimed in the 863 Patent and by making, selling, importing, offering for sale and/or using the aforementioned products that interconnect a WAN and a WLAN as claimed, Defendants have been and are now directly infringing under 35 U.S.C. § 271(a) one or more claims of the 863 Patent, either literally or under the doctrine of equivalents.

20. Defendants will continue to infringe the 863 Patent unless and until they are enjoined by this Court.

21. Defendants, by way of their infringing activities, have caused and continue to cause Qurio to suffer damages in an amount to be determined at trial. Plaintiff Qurio has no adequate remedy at law against Defendants' acts of infringement and, unless Defendants are enjoined from its infringement of the 863 Patent, Plaintiff Qurio will continue to suffer irreparable harm.

22. As a result of Defendants' unlawful infringement of the 863 Patent, Plaintiff Qurio has suffered and will continue to suffer damage. Plaintiff Qurio is entitled to recover from

Defendants the damages adequate to compensate for such infringement, which have yet to be determined.

## COUNT II:
## INFRINGEMENT OF THE 904 PATENT

23. Plaintiff incorporates paragraphs 1-16 herein by reference as if set forth here in full.

24. Defendants have been and are currently directly infringing, literally or under the doctrine of equivalents, one or more claims of the 904 Patent by making, using, offering to sell, and/or selling within the United States, and/or importing into the United States, without authority, products and services, and performing methods within the United States, that control digital content played by a plurality of media devices as claimed in the 904 Patent. Without limitation, and by example only, Defendants directly infringe and continue to directly infringe one or more claims of the 904 Patent by making, selling, using and/or offering for sale at least their Dish Anywhere Mobile Apps and related products and services.

25. By making, selling, importing, offering for sale and/or using the aforementioned products and services that control digital content played by a plurality of media devices as claimed, Defendants have been and are now infringing under 35 U.S.C. § 271(a) one or more claims of the 904 Patent, either literally or under the doctrine of equivalents.

26. Upon information and belief, upon knowledge of the 904 Patent (at least since the filing date of this Complaint, or by September 25, 2014 when Notice was given to Defendants), Defendants are inducing infringement of the 904 Patent by, among other things, knowingly and with intent, actively encouraging their customers, suppliers, users, agents and affiliates to make, use, sell and/or offer for sale Defendants' aforementioned products and services, and personal mobile devices for controlling digital content played by a plurality of media devices that

constitutes infringement of one or more claims of the 904 Patent, with the knowledge and specific intent to encourage, direct and facilitate those infringing activities, and knowing that such activities infringe the 904 Patent, including through the creation and dissemination of software, promotional and marketing materials, instructional materials, product materials and technical materials.  For example, Defendants provide users with Defendants' Dish Anywhere software and instructions, which provide apparatus, direction and instructions on how to infringe the 904 Patent.

27.  By inducing its customers', suppliers', users', agents' and affiliates' performance of the methods claimed and/or making and using the devices claimed in the 904 Patent, Defendants have been and are now infringing under 35 U.S.C. § 271(b) one or more claims of the 904 Patent, either literally or under the doctrine of equivalents.

28.  Defendants will continue to infringe the 904 Patent unless and until they are enjoined by this Court

29.  Defendants, by way of their infringing activities, have caused and continue to cause Qurio to suffer damages in an amount to be determined at trial.  Plaintiff Qurio has no adequate remedy at law against Defendants' acts of infringement and, unless Defendants are enjoined from its infringement of the 904 Patent, Plaintiff Qurio will continue to suffer irreparable harm.

30.  As a result of Defendants' unlawful infringement of the 904 Patent, Plaintiff Qurio has suffered and will continue to suffer damage.  Plaintiff Qurio is entitled to recover from Defendants the damages adequate to compensate for such infringement, which have yet to be determined.

**PRAYER FOR RELIEF**

**WHEREFORE**, Qurio respectfully requests that this Court enter judgment in its favor as follows:

A. Holding that Defendants have infringed, literally and/or under the doctrine of equivalents, one or more of the claims of the Plaintiff's United States Patent no. 8,102,863;

B. Holding that Defendants have infringed, literally and/or under the doctrine of equivalents, one or more of the claims of the Plaintiff's United States Patent no. 7,787,904;

C. Permanently enjoining Defendants and their officers, directors, agents, servants, employees, affiliates, divisions, branches, subsidiaries, parents and all others acting in concert or privity with any of them from infringing, inducing the infringement of, or contributing to the infringement of any of Plaintiff's Patents;

D. Permanently enjoining the manufacture, use, offering for sale and/or sale of the products and services made and/or sold by Defendants that are found to infringe any of Plaintiff's Patents;

E. Awarding to Qurio the damages to which it is entitled under 35 U.S.C. § 284 for Defendants' past infringement and any continuing or future infringement up until the date Defendants are finally and permanently enjoined from further infringement, including compensatory damages;

F. Declaring this to be an exceptional case and awarding Qurio's attorneys' fees under 35 U.S.C. § 285;

G. Awarding Qurio costs and expenses in this action;

H. Awarding Qurio pre- and post-judgment interest on its damages; and

I. Awarding Qurio such other and further relief in law or in equity as this Court deems just and proper.

**JURY DEMAND**

Qurio Holdings, Inc. under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any and all issues so triable by right.

Dated: September 26, 2014
Chicago, Illinois

        McANDREWS, HELD, & MALLOY, LTD.

By: /s/ Kirk Vander Leest
Kirk Vander Leest, Esq.
James P. Murphy, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street, 34th Floor
Chicago, Illinois  60661
Tel: (312) 775-8000
Fax: (312) 775-8100
Email: kvanderlest@mcandrews-ip.com
Email: jmurphy@mcandrews-ip.com

Attorneys for Plaintiff
QURIO HOLDINGS, INC.