IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| QURIO HOLDINGS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 14 C 7504 |
| ) | |
| DISH NETWORK CORP. and ) | |
| DISH NETWORK, LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Qurio Holdings, Inc. has sued DISH Network Corp. and DISH Network, LLC (collectively "DISH") for infringement of three U.S. patents. The patents involve technology for distributing television programs to personal communication devices. Although Qurio is headquartered in New Hampshire, it filed suit here in Chicago.

DISH, which is headquartered in Engelwood, Colorado (near Denver) has moved to transfer the case not to the District of Colorado but to the Northern District of California. DISH has filed its motion under 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought[.]" 28 U.S.C. § 1404(a).

To obtain a transfer under section 1404(a), the moving party must demonstrate that the proposed transferee forum is "clearly more convenient." *Heller Fin., Inc. v. MidWhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989); *Coffey v. Van Dorn Iron*

*Works*, 796 F.2d 217, 219–20 (7th Cir. 1986).  "'Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'"  I*n re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer."  *Research Automation, Inc. v. Schrader–Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

1.  **Convenience of the parties and witnesses**

In evaluating the convenience of the parties and witnesses, a court considers (1) the plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access to proof, (4) the parties' convenience, and (5) the witnesses' convenience in litigating in the respective forums.  *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000)*; see also Research Automation*, 626 F.3d at 978*.*

a.  **Plaintiff's choice of forum**

Courts ordinarily give substantial weight to the plaintiff's choice of a forum, particularly when it is the plaintiff's home forum.  *See In re Nat'l Presto Indus.*, 347 F.3d at 664 (plaintiff's choice "should rarely be disturbed"); *cf. Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981) (common law *forum non conveniens* doctrine).  DISH says, however, that a plaintiff's choice of a forum is entitled to "little if any deference" if "none of the conduct occurred in [that] forum" or "if another forum bears a stronger relationship to the dispute."  Defs.' Reply at 1.  The first part of this contention is not that far off, at least in a case where the plaintiff has not chosen its home forum.  The Seventh Circuit has said, in a case where the plaintiff sued outside her home forum, that

the plaintiff's choice of forum "has minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff . . . ." *Chicago, Rock Island & Pacific R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) (internal quotation marks omitted). Minimal value, however, does not mean no value.

The second part of DISH's contention, however, is incorrect. Though the proposition that the plaintiff's choice of a forum is entitled to little deference if another forum has a stronger relationship to the dispute appears in some district court decisions, it finds no support in the Seventh Circuit's cases. The proposition cannot possibly be correct. If it was, it would mean that the plaintiff's forum choice gets deference only if the plaintiff picks the forum with the greatest connection to the dispute, and that the plaintiff's choice does not get deference even if the plaintiff has chosen its home forum. Neither of these is an accurate statement of the law, at least not in this Circuit.

Here Qurio has not chosen its home forum. That reduces the amount of deference given to Qurio's choice, but it does not eliminate it entirely. *Piper Aircraft*, a common law *forum non conveniens* case cited by DISH and often cited on the section 1404(a) question, does not say that the plaintiff's choice is entitled to no deference if it is not the plaintiff's home. Rather, it says (speaking of a non-U.S. plaintiff) that "[w]hen the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference." *Id.* at 255-56. Less deference does not mean no deference.

### b. Situs of material events

The events underlying the litigation have no relationship with this district. Infringement is claimed to have occurred here, but given the products at issue, this does not differentiate this district from any other federal district. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) ("[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue."). There is no basis to say that the degree of infringement in this district is more significant than in other districts generally, or in the proposed transferee district in particular.

Qurio's attorneys in this lawsuit are located here, but it does not argue that this is a relevant factor. Though the Court can imagine a case where it might be, this is not such a case; reliance on this factor would permit a plaintiff in a patent infringement suit to pick its venue by its choice of attorneys.

No events of significance took place in this district. First, the patented products and methods appear to have been developed in North Carolina, and the patents were likewise prosecuted by attorneys located there. *See* Compl., Exs. A, B & C.

Second, it appears that the development of the infringing products—a relevant factor in the analysis, *see Acer Am. Corp.*, 626 F.3d at 1256—took place in northern California, India, and Colorado. Specifically, Qurio accuses DISH of infringing two of the patents by making and offering for sale "their ViP DVRs and Hopper DVSs with Sling, and related products and services, and by providing and operating the Sling technology on their media distribution WAN, and transmitting to customers' devices over a WAN." Compl. ¶ 20; *see also id.* ¶ 36. With regard to the third patent, Qurio accuses DISH of infringing by making and offering for sale "their ViP, Hopper, Hopper with Sling

DVRs, and Dish Anywhere Mobile Apps and related products and services." *Id.* ¶ 28. Sling, which is not a party to this case, is a subsidiary of EchoStar, which like DISH has its principal place of business in Englewood, Colorado.  A series of affidavits offered by DISH reflects that the Sling technology was developed and marketed in northern California "and in Bangalore, India," by persons who likely continue to live in California but most of whom no longer work for Sling.  *See, e.g.*, Asnis Decl. ¶ 4.  Finally, EchoStar, which as indicated earlier is located in Colorado, also supplies an accused functionality to DISH, specifically, receivers.  *See* Tirpak Decl. ¶¶ 4, 5.

Because this is not Qurio's home district and no material events took place here, its choice of this district is not entitled to significant weight in balancing the factors under section 1404(a).

   c.   **The parties' convenience**

The only contact of significance between the lawsuit and this district is the fact that Qurio has separately sued two other defendants here for infringement of the same patents, and the claims in each of these lawsuits overlap.  Qurio says the ability to sue all three defendants in the same place is why it filed the lawsuit here and that this is a significant factor when considering convenience of the parties.  Qurio argues that it is more convenient for all of its lawsuits concerning the patents in suit to proceed in tandem for pretrial purposes (including claim construction), to avoid extra expense, duplication of effort, and conflicting rulings.  Qurio says that it is not well-heeled and that litigating the same issues in different districts would pose a hardship.

This is a relevant factor in the analysis, which the Court will take into account. The Court notes, however, that procedures exist by which lawsuits pending in different

districts, including patent infringement suits, may be transferred to a single district and judge for pretrial purposes.  *See* 28 U.S.C. § 1407 (multidistrict litigation).  The Court will discuss this point further when addressing the interests of justice.

It is typically more convenient for a party to litigate in its home district, and thus this factor is usually a tie when a court considers a section 1404(a) motion.  In this case, however, neither party wants the case in its home district.  Qurio says that it might have had difficulty obtaining personal jurisdiction over DISH in New Hampshire or in North Carolina, but it has not supported this contention (such as by showing that DISH does not distribute the accused products into those states).

### d. Access to sources of proof

Because the convenience of witnesses is assessed separately, the factor of "access to sources of proof" typically involves relevant records.  In this case, there are no relevant records in the Northern District of Illinois, at least not that anyone has identified.  Records relating to the work of the inventors and prosecution of the patent likely are located in North Carolina.  Records relating to the development and sale of the accused devices are located in the Eastern District of Pennsylvania.  And there are records regarding prior art—which might be relevant regarding validity of the patents—that are, or at least may be, located in the Northern District of California.

The Federal Circuit has, at least in some cases, cited the location and transportation of records as a significant consideration in assessing convenience.  *See, e.g., In re Genentech, Inc.*, 566 F.3d at 1345-46 (discussing the "burden on the petitioners to transport documents").  Respectfully, it is difficult to take this seriously.  Although section 1404(a) was adopted in the 1940s, it does not require a court to

6

pretend that lawsuits are litigated and tried as they were in that era. Business records nowadays are nearly all maintained digitally. More to the point, as any experienced litigator or trial judge can attest, when records are produced in litigation nowadays, they are all (or virtually all) *produced* digitally. The old saw about "backing up the truck" when a party seeks broad production of records now has meaning only to litigators of a certain age. There is no truck and, for the most part, there are not even boxes. Rather, documents are produced on digital media. Records that are in California are barely less accessible to a litigant in Illinois than they would be if they were in Illinois. And to directly address the point made in *Genentech*, the days when records had to be physically shipped in for trial or even document production during discovery are long gone. The Seventh Circuit, whose cases concerning section 1404(a) govern here, has acknowledged this. *See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000) (discussing section 1404(a); "Easy air transportation, the rapid transmission of documents, and the abundance of law firms with nationwide practices, make it easy these days for cases to be litigated with little extra burden in any of the major metropolitan areas.").

     A court need not and should not put on blinders when it considers this factor. As the Court has indicated, the fact that section 1404(a) has been around for decades does not mean that "access" should be assessed the same way in 2015 as it was in 1948 or even, for that matter, in 2000. The Court acknowledges that some Federal Circuit decisions seem to point the other way, but they reflect a misunderstanding of how litigants and lawyers access relevant records these days. And contrary to the court's indication in *Genentech*, this in no way reads this factor out of the section 1404(a)

analysis or renders it "superfluous." Rather, the Court is addressing the weight appropriately given this factor in the "individualized, case-by-case consideration of convenience and fairness" mandated by the Seventh Circuit, *Coffey*, 796 F.2d at 219, and the Supreme Court. *See Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

### e.   Convenience of witnesses

As the Court has indicated, neither side identifies any witnesses who are located in this district. The inventors and the attorney who prosecuted the patent may be witnesses, but they are located in North Carolina.

DISH says that witnesses regarding prior art references that were either cited in the patents in suit or that are likely relevant on the issue of validity are located in California. DISH's contention that prior art witnesses should factor into the analysis is unpersuasive. In the overwhelming majority of cases, prior art is proved up via documents and expert testimony; testimony by fact witnesses is rare and, in fact, is disfavored. *See, e.g., Finnigan Corp. v. ITC*, 180 F.3d 1354, 1366 (Fed. Cir. 1999) (collecting cases).

Some of these same witnesses, however, were involved in the development of the Sling technology, which Qurio accuses of infringing at least two of the three patents, and possibly all three of them. These witnesses are located, for the most part, in northern California. None of them is currently affiliated with DISH, and thus their live testimony at trial cannot be assured unless they are within the subpoena power of the trial court. This is a significant factor in the section 1404(a) analysis. *See Acer Am. Corp.*, 626 F.3d at 1256.

**2.      Interests of justice**

Consideration of the "interests of justice" under § 1404(a) "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey*, 796 F.2d at 220.  The Seventh Circuit has stated that factors typically considered "relate to the efficient administration of the court system."  *Id.* at 221.   One such factor involves "where the litigants are more likely to receive a speedy trial."  *Id.*  In addition, the Seventh Circuit has stated that "related litigation should be transferred to a forum where consolidation is feasible."  *Id.; see also Heller Fin.*, 883 F.2d at 1293 ("trying related litigation together" is a relevant interests-of-justice factor).  Another factor is the respective courts' familiarity with the applicable law.  *See id.*  This, however, is typically a consideration only in diversity cases.  It would be difficult to say, perhaps with some small number of exceptions, that any given federal judge is more familiar with patent law than any other.  Other factors that may be considered include "the respective desirability of resolving controversies in each locale and the relationship of each community to the controversy."  *Research Automation*, 626 F.3d at 978 (internal citation omitted).

DISH cites statistics indicating that cases get to trial slightly quicker in the Northern District of California than in this district.  *See* http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseload Statistics/2014/tables/C05Mar14.pdf (last viewed Feb. 8, 2015).  The difference, however, is immaterial (28.4 months vs. 31.2 months).  In any event, only a minuscule percentage of go to trial, and the time to disposition for cases that do not go to trial is virtually identical in the two districts.  Moreover, as the Federal Circuit has noted, "case-

9

disposition statistics may not always tell the whole story."  *Genentech*, 566 F.3d at 1347.  The statistics in question cover the whole gamut of civil cases and say nothing about the time it takes patent infringement cases to get to trial.  One way or another, however, the statistics that DISH cites are a neutral factor in the analysis.

As far as the relationship of the two communities to the dispute, the Court has already addressed this in discussing the situs of the material events.  In a nutshell, this district has no relationship to Qurio's dispute with DISH.  The Northern District of California, where DISH proposes to transfer the case, has a more significant relationship because it is where the accused Sling technology was developed.  It is likely, however, that the most significant relationship between the material events and a particular venue exists in a forum neither side has proposed, namely the District of Colorado.  At least one set of infringing products—receivers—appears to have been developed there; both DISH, the defendant, and EchoStar, the parent of Sling, are located there; and because of this, marketing and sales regarding the accused products likely has its base in that district.

The last factor the Court will discuss is the matter of related litigation and the possibility of consolidation.  The Seventh Circuit, as noted earlier, has specifically identified this as a relevant consideration under section 1404(a).  *Coffey*, 796 F.2d at 220; *see also Heller Fin.*, 883 F.2d at 1293.  This is the key factor upon which Qurio relies; indeed it is the reason Qurio cites for filing the present lawsuit here.  If the case is transferred, Qurio argues, the courts will not be able to resolve related litigation together.  This disserves the interests of justice, because it makes it more likely that there will be judicial duplication of effort involving, among other things, construction of

patent claims involved in all or more than one of the cases.

This is a valid consideration, but in the Court's view it is not appropriately given controlling weight in this case, given the lack of any other material connection between this district and the parties, the witnesses, or the underlying dispute. The Federal Circuit has indicated that in this scenario, the pendency of other related litigation in the district where the plaintiff filed is not a basis to defeat transfer of a particular lawsuit. In *In re Apple, Inc.*, 581 F. App'x 886 (Fed. Cir. 2014), the court granted (on a 2-1 vote) a petition for mandamus directing a district court to grant a defendant's motion to transfer venue. The plaintiff had no significant business presence in its chosen venue, and the defendant was located in the proposed transferee venue. In addition, there were numerous witnesses—including some non-party witnesses—in the transferee venue, and none in the plaintiff's chosen forum. *See id.* at 887. The trial court nonetheless declined to transfer the case, relying in large part on the fact that there were other pending cases in its district involving the same patents in suit and that it was likely the cases could be consolidated, thus achieving "significant judicial economy." *Id.* at 887-88. The Federal Circuit concluded that the trial court had clearly abused its discretion, making mandamus appropriate. With regard to the related-cases issue, the court said that "judicial economy is just one relevant consideration," and that although "transfer may mean that some of the other related cases remain in the [plaintiff's chosen forum], multidistrict litigation procedures exist to mitigate inefficiencies in this type of situation." *Id.* at 889. Though this "do[es] not render the practical problems factor neutral," the court said, "it do[es] mitigate some judicial economy concerns such that the district court should not have weighed this factor so heavily against transfer." *Id.* at 889-90.

There is arguably some tension between *In re Apple* and the Federal Circuit's earlier decision in *In re Vistaprint Ltd.*, 628 F.3d 1342 (Fed. Cir. 2010), in which it declined to grant a writ of mandamus ordering the trial court to transfer a case. The trial court had relied in part on the existence of "co-pending litigation before the trial court involving the same patent and underlying technology." *Id.* at 1346. The Federal Circuit concluded that this, along with other factors, "provide[d] a substantial justification for maintaining suit" in the plaintiff's chosen forum and declining transfer. *Id.* at 1346. In *Vistaprint*, however, "no defendant party [was] actually located in the [proposed] transferee venue and the presence of the witnesses in that location [was] not overwhelming." *Id.* at 1346-47.

The present case falls somewhere between *In re Apple* and *Vistaprint*. As in *Vistaprint*, DISH is not located in the proposed transferee district. But unlike in that case, and as in *Apple*, a number of potentially significant infringement-related witnesses are located there. And because they are not affiliated with DISH, their presence at trial cannot be assured if the case remains in this district. On balance, this case is closer to *Apple* than *Vistaprint.*

## Conclusion

Qurio chose this forum hoping to litigate three interrelated cases in a single district. This was an appropriate objective, but it does not carry the day. Qurio's choice of this district is entitled to little weight because it is not Qurio's home district, and its dispute with DISH has no significant relationship to this district. No material events took place here, and no witnesses are located here. The Court concludes that DISH has shown that a different forum is clearly more convenient. A case can be made that the

appropriate place to litigate and try the case is the District of Colorado, DISH's home forum and the likely location of a number of significant witnesses, perhaps including some non-parties.  But DISH does not seek transfer to that district.  The Court concludes that transfer to the Northern District of California is appropriate.  Many if not most of the accused functionalities were developed there, and a number of significant non-party infringement-related witnesses reside there.  The Court therefore grants defendants' motion to transfer [docket no. 24].  The Clerk is directed to transfer this case to the Northern District of California.  Plaintiff's motion to consolidated cases is terminated as moot [docket no. 31].

Date:  February 9. 2015                                  _____
                                                                      MATTHEW F. KENNELLY
                                                                      United States District Judge