UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QURIO HOLDINGS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>DISH NETWORK CORPORATION, et al.,<br><br>    Defendants. | Case No. 15-cv-00930-HSG<br><br>**ORDER DENYING MOTION TO TRANSFER**<br><br>Re: Dkt. No. 46 |

Pending before the Court is Plaintiff Qurio Holdings, Inc.'s motion to transfer venue to the Eastern District of North Carolina ("EDNC"). Defendants DISH Network LLC and DISH Network Corporation[1] oppose the motion and argue that the case should remain in this district. For the reasons stated below, the Court agrees with Defendants and accordingly DENIES the motion.

## I.   BACKGROUND

### A.   Procedural Background

Plaintiff originally filed this action in the Northern District of Illinois ("NDIL"), seeking injunctive relief and damages for infringement of United States Patent Nos. 8,102,863 (entitled "High-Speed WAN to Wireless LAN Gateway"), 7,787,904 (entitled "Personal Area Network Having Media Player And Mobile Device Controlling The Same"), and 8,879,567 (entitled "High-Speed WAN To Wireless LAN Gateway"). Dkt. No. 17 ("FAC").

On the same day that Plaintiff filed this action, it also filed two separate actions in the NDIL asserting infringement of the same three patents against DirecTV, LLC and Comcast Corp. None of Plaintiff's patent infringement actions remain in the NDIL.

---

[1] At the June 4, 2015 hearing, the Court granted Plaintiff's motion to dismiss Defendant DISH Network Corporation from this action without prejudice. *See* Dkt. No. 80.

First, on February 9, 2015, Plaintiff's action against Comcast Corp. was transferred to the Eastern District of Pennsylvania ("EDPA") ("Comcast Action"). Dkt. No. 46 ("Mot.") at 3. Second, and most relevant here, on February 24, 2015, Plaintiff's action against Defendants was transferred to this district. *Qurio Holdings, Inc. v. DISH Network Corp. et al.*, Case No. 3:15-cv-00930-HSG, Dkt. Nos. 37, 39 (N.D. Cal.) ("DISH Action"). The NDIL found that the Northern District of California ("NDCA") was a "clearly more convenient" venue for the DISH Action than the NDIL because "[m]any if not most of the accused functionalities were developed there, and a number of significant non-party infringement-related witnesses reside there." Dkt. No. 37 ("NDIL Order") at 12-13.

Finally, on May 4, 2015, Plaintiff's action against DirecTV was transferred to this district. *Qurio Holdings, Inc. v. DirecTV, LLC*, Case No. 3:15-cv-01986-HSG, Dkt. Nos. 72-73 (N.D. Cal.) ("DirecTV Action"). In ruling on the transfer, the NDIL considered cross-motions to transfer venue similar to the motion pending before this Court in the DISH Action: Plaintiff argued that the case should be transferred to the EDNC, and Defendant argued that the case should be transferred to the NDCA. DirecTV Action, Dkt. No. 72.

On May 21, 2015, this Court related the DirecTV and DISH Actions. Dkt. No. 78.

### B. Factual Background

Plaintiff is a Delaware corporation with a principal place of business in New Hampshire. FAC ¶ 1. Plaintiff's New Hampshire office is "the place where Qurio's high level officers direct, control, and coordinate the corporation's activities." Dkt. No. 62 ("Reply") at 2. Plaintiff also asserts, however, that it "has its principal place of business in Raleigh, North Carolina," where Plaintiff's "engineering activities" and "research and development" occur. *Id.* at 2; Mot. at 9-10. None of the named inventors of the patents-in-suit are currently employed by Plaintiff. *See* Mot. at 13, 15; Dkt. No. 79. The lawyers who prosecuted the patents-in-suit are located in Cary, North Carolina. Mot. at 10.

Defendant Dish Network LLC has its principal place of business in Colorado. FAC ¶ 3. Plaintiff alleges that Defendant infringes the patents by making and distributing "products and services that allow users to transfer and display video and other content from Defendant['s] wide

2

area network, including but not limited to Defendant['s] television broadcasting services and DVR, Hopper and Sling products and services." *Id.* ¶ 16. Defendant avers that the inventors of the Sling functionality, who are not affiliated with Defendant, reside in the NDCA. Dkt. No. 55 ("Opp.") at 18.

## II. DISCUSSION

### A. Legal Standard

28 U.S.C. § 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of this statute is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

"[T]he fact that an action has been transferred once does not preclude the transferee court from entertaining a subsequent motion to transfer." *Techshell, Inc. v. Incase Designs Corp.*, No. 11-cv-04576-YGR, 2012 WL 692295, at *4 (N.D. Cal. Mar. 2, 2012) (internal quotation marks omitted). However, where a plaintiff seeks a transfer back to the original transferor court, the transferee court should not retransfer "except under the most impelling and unusual circumstance or [unless] the transfer order is manifestly erroneous." *Ametek, Inc. v. Hewlett-Packard Co.*, No. 90-cv-20278-DLJ, 1990 WL 10072473, at *1 (N.D. Cal. July 10, 1990) (internal quotation marks omitted) (brackets in original).

When ruling on a motion to transfer under § 1404(a), courts consider "both public factors which go to the interests of justice and private factors, which go to the convenience of the parties and witnesses." *Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 820 (N.D. Cal. 2008). Private interest factors include "ease of access to sources of proof, plaintiff's choice of forum, relative convenience to parties, and relative convenience to witnesses." *Id.* Public interest factors include "degrees of court congestion, local interest in deciding local controversies, potential conflicts of laws, and burdening citizens of an unrelated forum with jury duty." *Id.* at 821. It is the moving party's burden "to show that when these factors are applied, the balance of convenience clearly favors transfer." *Trend Micro Inc. v. RPost Holdings, Inc.*, No. 13-cv-05227-

WHO, 2014 WL 1365491, at *5 (N.D. Cal. Apr. 7, 2014).

### B.  Defendant's Threshold Arguments Do Not Mandate Denial Of The Motion To Transfer Venue

Defendant argues at the outset that the Court should not consider the merits of Plaintiff's motion because 1) Plaintiff allegedly misrepresents the facts regarding the location of its principal place of business, and 2) public policy disfavors relitigating a motion to transfer in the transferee forum.  As described below, the Court is not persuaded by these threshold arguments and therefore finds it proper to rule on the merits of Plaintiff's motion.

#### 1.  Alleged Factual Misrepresentations

Defendant argues that Plaintiff's motion misrepresents the location of its principal place of business in an attempt to manipulate the § 1404(a) convenience factors.  *See* Opp. at 7-10.  Plaintiff contends that its representations in the present motion to transfer are inconsistent with its previous statements in this case regarding its principal place of business.

The Court declines to consider the consistency, or lack thereof, of Plaintiff's factual representations as a threshold issue.  The Court finds Defendant's argument more relevant to the analysis of the various convenience factors below.  Furthermore, the Court notes that the NDIL Order indicates that Plaintiff has previously represented that the EDNC is one of its "home" districts.  *See* NDIL Order at 6 (noting that Plaintiff did not want the action transferred to its "home district" at the time because Plaintiff indicated it "might have had difficulty obtaining personal jurisdiction over DISH in New Hampshire or in North Carolina").

#### 2.  Retransfer Threshold Requirements

Defendant next argues that this Court should not consider Plaintiff's motion because Plaintiff has failed to demonstrate that the NDIL Order was "manifestly erroneous," or that "impelling and unusual" circumstances exist such that the retransfer is justified.

As noted above, this issue typically arises in the context of a motion by a plaintiff to transfer venue back to the original court in which the suit was filed.  In this case, even if the Court were to find that the NDIL Order was "manifestly erroneous," such finding would not affect the pending motion since the NDIL did not consider the convenience of litigating the DISH Action in

4

1   the EDNC. Therefore, the concerns raised by traditional motions to retransfer, which necessarily
2   require transferee courts to review the decisions of transferor courts, are not present here.

3   However, "the rationale behind the requirement that a plaintiff demonstrate changed
4   circumstances' "—*i.e.*, the rationale that forum shopping should be strongly discouraged—"is just
5   as applicable in this case." *Bobosky v. Adidas AG*, No. 10-cv-00630-PK, 2010 WL 4853295, at *6
6   (D. Or. Oct. 8, 2010), *report and recommendation adopted by* No. 10-cv-00630-PK, 2010 WL
7   4828392 (D. Or. Nov. 18, 2010). In *Bobosky*, the plaintiffs originally filed suit in Texas. *Id.* at
8   *2. After the defendant's motion to transfer the case to Oregon was granted, the plaintiffs
9   attempted to argue that venue would be more appropriate in Illinois. *Id.* at *6. The Oregon court
10  noted that it was "troubled by plaintiffs' attempts at forum shopping" and held that, because no
11  evidence of changed circumstances was presented, the plaintiffs had not "satisfied the threshold
12  requirement for a motion to transfer venue." *Id.* at *7.

13  The facts here are similar to those in *Bobosky*. Plaintiff did not argue that the EDNC was
14  the most convenient forum until after Defendant successfully transferred the action to this Court.
15  Nor has Plaintiff made a compelling argument that changed circumstances justify the motion.
16  Plaintiff's only argument is that its original reason for filing all three patent infringement actions
17  in the NDIL—to litigate the cases as efficiently as possible in a single judicial district—is no
18  longer applicable, since the Comcast Action was transferred to the EDPA, the DISH Action was
19  transferred to the NDCA, and Plaintiff expected the DirecTV Action to be transferred to the
20  EDNC at the time the pending motion was briefed. Of course, circumstances have since changed
21  again: the NDIL found that the NDCA is a more convenient forum for the DirecTV Action than
22  the EDNC, and now both the DirecTV Action and the DISH Action have been transferred to the
23  NDCA. As such, Plaintiff's justification for its original choice of forum actually supports *denial*
24  of its present motion to transfer venue, since the three cases can be litigated most efficiently if at
25  least two cases are in the same district.

26  The Court doubts that Plaintiff has demonstrated the requisite "changed circumstances" to
27  justify this motion. However, the Court assumes without deciding that Plaintiff's motion is
28  proper, since the balance of the convenience factors also demonstrates that the motion must be

denied.

### C. The DISH Action Could Have Been Brought In The Eastern District of North Carolina

Plaintiff argues that the DISH Action could have been brought in the EDNC because that district has personal jurisdiction over Defendant DISH Network LLC and venue is proper there. Defendant does not contest those assertions, but argues that Plaintiff has nevertheless failed to satisfy its threshold burden under § 1404(a) because it has not shown that the DISH Action could have been brought in the EDNC against DISH Network Corporation, which this Court recently dismissed as a Defendant in this case.

The Court need not "confine its venue consideration to the facts as they existed at the time of the complaint." *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 819 (3d Cir. 1982) (holding that the district court did not abuse its discretion by transferring cases to districts in which venue would have been improper as to certain defendants who had settled with the plaintiff before the transfer occurred). Considering the facts as they exist now, venue is proper in the EDNC as to DISH Network LLC, the only Defendant remaining in this action. The Court therefore finds that Plaintiff has shown that the DISH Action could have been brought in the EDNC as required by § 1404(a).

### D. Private Interest Factors

#### 1. Plaintiff's Choice of Forum

Plaintiff argues that its choice of forum is entitled to substantial deference. While this is generally true, *see Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986), such deference is not warranted for a plaintiff's *second* choice of venue. *See Bobosky*, 2010 WL 4853295, at *6 ("[A]lthough a plaintiff's first choice of venue is strongly favored, subsequent venue choices are not given the same deference because, if they were, a motion to transfer venue could become an unchecked tool for the plaintiff to shop among forums and between judges.") (internal quotaton marks omitted); *Tiffany v. Hometown Buffet, Inc.*, No. 06-cv-02524-SBA, 2006 WL 2792868, at *2 (N.D. Cal. Sept. 28, 2006) (declining to give any "presumption of deference for the Plaintiffs' second choice of forum").

6

The Court finds that this factor is neutral. Plaintiff's choice of the EDNC as a forum is not entitled to deference because it is Plaintiff's second-choice forum.

### 2. Ease of Access to Sources of Proof

Aside from witness testimony, which is discussed further below, neither party points to any non-documentary sources of proof that will be relevant to this lawsuit. Furthermore, neither party argues that the transportation of evidentiary documents will impose any undue burden. "With technological advances in document storage and retrieval, transporting documents does not generally create a burden." *David v. Alphin*, No. 06-cv-04763-WHA, 2007 WL 39400, at *3 (N.D. Cal. Jan. 4, 2007). The Court finds that this factor is neutral.

### 3. Convenience to Parties

Plaintiff argues that the EDNC is a more convenient forum because Plaintiff's "principal place of business" is in Raleigh, North Carolina, it "has always been headquartered in the EDNC," and traveling to three different districts to litigate these patent infringement actions would place undue financial and operational burdens on a small company of fewer than ten employees. Mot. at 10. On the other hand, Plaintiff argues, Defendant is headquartered in Colorado and will therefore be no more inconvenienced by litigating in the EDNC than it would be by litigating in the NDCA. *Id.* at 11.

The Court agrees that litigating this case in the EDNC would not be any less convenient for Defendant than litigating in the NDCA. However, the Court finds that overall this factor is neutral, at best. Litigating the DISH Action in the EDNC would be more convenient for Plaintiff than the NDCA *if* this were the only action that required Plaintiff's attention. But there are two other related actions pending, one of which—the DirecTV Action—was recently transferred to this district over Plaintiff's objection that it belonged in the EDNC. Since Plaintiff must continue to litigate the DirecTV Action in this district, it would not be any more convenient to Plaintiff for the Court to transfer the DISH Action to the EDNC. Indeed, keeping both actions in the NDCA and coordinating their schedules would likely be *more* convenient for Plaintiff than litigating the two actions in separate districts.

#### 4. Convenience to Witnesses

Convenience to witnesses "is often the most important factor considered by the court when deciding a motion to transfer for convenience." *Kannar v. Alticor, Inc.*, No. 08-cv-05505-MMC, 2009 WL 975426, at *2 (N.D. Cal. Apr. 9, 2009) (internal quotation marks omitted). When considering this factor, courts should give primary consideration to third-party, as opposed to employee, witnesses. *Id.*

Plaintiff avers that "all of [its] personnel and witnesses that are expected to testify at trial reside in North Carolina," and specifically identifies two non-party witnesses—Alfredo Isssa and Greg Evans, the named inventors of the patents-in-suit—who reside in the EDNC. Mot. at 13, 15; Dkt. No. 79. Defendant avers that six individuals who developed the Sling technology that is incorporated into Defendant's allegedly infringing products reside in the NDCA and are no longer affiliated with Defendant. Opp. at 18. Defendant argues that the testimony of these individuals is "particularly relevant" to the litigation "because they developed and filed patent applications for the accused [Sling technology] before the patents-at-issue were filed." *Id.*

The Court finds that this factor is neutral. Like the convenience of the parties, the convenience of the party witnesses is not dramatically increased by transferring this action to the EDNC. While Plaintiff's party witnesses reside in the EDNC, they will be required to travel to the NDCA anyway to testify in the DirecTV Action. Indeed, Plaintiff's original intention was to consolidate its lawsuits in a single district—the NDIL, which would at most be only slightly more convenient for its North Carolina-based witnesses than the NDCA—to streamline the efficiency of the litigation and, presumably, increase the convenience of its witnesses. Furthermore, the Court finds that the parties have identified third-party witnesses with relevant testimony who reside in both the NDCA and the EDNC.[2] While Plaintiff speculates that "it is virtually certain that Mr. Issa will not voluntarily travel to the NDCA to testify," Reply at 13, the Court does not find this to

---

[2] The Court rejects Plaintiff's assertion that Defendant "has not identified any relevant non-party witnesses with relevant testimony in the NDCA." Reply at 9-10. Defendant has done more than "merely provide a list of names." *Id.* at 10. Defendant specifically names six inventors of the Sling technology, Opp. at 18, which Plaintiff alleges is incorporated into the infringing products, FAC ¶ 16. Furthermore, Defendant specifically describes the relevance of those individuals' testimony. *See* Opp. at 18.

8

be a persuasive reason to transfer the case to the EDNC since Plaintiff was willing to take its chances that Mr. Issa would not voluntarily travel to the NDIL to testify.  In sum, this factor does not weigh heavily for or against transfer.

### E. Public Interest Factors

#### 1. Local Interest

This factor takes into account the current and transferee forums' interests "in having localized controversies decided at home." *Decker*, 805 F.2d at 843.  Plaintiff argues that because its "day-to-day operations" are located in the EDNC, and the named inventors of the patents-in-suit also reside there, the EDNC has a specific interest in protecting the property rights of its citizens.  Reply at 13-14.

However, courts in this district have indicated that forums where the operative facts occurred also have an interest in deciding a case.  In patent cases, the preferred forum is that forum which is the "center of the accused activity"—*i.e.*, "where the defendant is alleged to have developed, tested, researched, produced, marketed, and made sales decisions concerning the accused product."  *Sorensen v. Daimler Chrysler AG*, No. 02-cv-04752-MMC, 2003 WL 1888866, at *3 (N.D. Cal. Apr. 11, 2003) (internal quotation marks omitted).  In this case, it appears that the "accused activity" occurred in both the District of Colorado—where the accused products were produced and marketed—and the NDCA—where the Sling technology incorporated into the accused products was developed, researched, and tested.  The Court therefore finds that this factor is neutral.

#### 2. Familiarity With Patent Law

Patent claims are governed by federal law, with which all federal courts are familiar.  *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed Cir. 2008) (finding that the district court correctly concluded that both the transferor and the transferee federal courts were equally capable of applying patent law to infringement claims).  Accordingly, the Court finds that this factor is neutral.

#### 3. Judicial Economy

The parties dispute whether patent infringement cases proceed to trial more quickly in the

NDCA than in the EDNC. *See* Mot. at 20 (arguing that the "median time to trial for all civil cases in the NDCA is 30.9 months, and in the EDNC is 27.0 months"); Opp. at 24 (listing statistics that demonstrate that patent infringement cases proceed to "claim construction" and "mature termination" at a faster pace in the NDCA than in the EDNC).

The Court finds that the "time to trial" statistics, while generally relevant when considering this factor, are not compelling here where there is no apparent material difference in efficiency between the EDNC and the NCDA. More importantly, as Plaintiff recognizes, "[c]ourts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice and having one trial court decide all of these claims clearly furthers that objective." *In re Google Inc.*, 412 F. App'x 295, 296 (Fed. Cir. 2011); *see* Mot. at 19-20. Keeping the DISH Action and the DirecTV Action in the NDCA will therefore "lead to the most efficient resolution of both cases." Mot. at 20. Accordingly, the Court finds that this factor weighs against transfer of the case to the EDNC.

## III.   CONCLUSION

The balance of the convenience factors does not clearly weigh in favor of transfer. Most of the factors are neutral, while the critical consideration of judicial economy weighs against transfer. Furthermore, the particular facts underlying this motion raise serious concerns regarding forum shopping. For the foregoing reasons, the Court DENIES Plaintiff's motion to transfer venue.

**IT IS SO ORDERED.**

Dated: July 9, 2015

HAYWOOD S. GILLIAM, JR.
United States District Judge